MARCO A. GONZALEZ (SBN 190832)
marco@coastlaw.com
LIVIA BORAK BEAUDIN (SBN 259434)
livia@coastlaw.com
NATALIE CLAGETT (SBN 351072)
natalie@coastlaw.com
COAST LAW GROUP, LLP
1140 South Coast Highway 101
Encinitas, CA 92024
Ph: (760) 942-8505
Fax: (760) 942-8515

BARAK KAMELGARD (SBN 298822)
barak@lawaterkeeper.org
BENJAMIN HARRIS (SBN 313193)
ben@lawaterkeeper.org
ERINA KWON (SBN 235079)
erina@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street, Suite 250
Los Angeles, CA 90012
Ph: (310) 394-6162

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association, | Case No.: 2:24-cv-06500-PA-JC |
| Plaintiff, | **CONSENT DECREE** |
| v. | |
| SCORPIO ENTERPRISES, INC., a California corporation; AIREMASTERS AIR CONDITIONING, INC., a California Corporation, | |
| Defendants. | |

[PROPOSED] CONSENT DECREE

## CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal, and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Defendants Scorpio Enterprises, Inc. and AireMasters Air Conditioning, Inc. ("Defendants") own and operate a facility at 12556 McCann Drive, Santa Fe Springs, California 90670, under Waste Discharger Identification number 4 19I029858 ("Facility");

**WHEREAS**, the Facility's industrial activities consist of manufacturing custom commercial heating, ventilation, and air conditioning ("HVAC") systems. Defendants engage in metal fabrication activities such as manufacturing metal ducts and exhaust fans, and compiling components of HVAC systems. The Facility is categorized under Standard Industrial Classification ("SIC") Code 3444 (Sheet Metal Work);

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility ("General Permit" or "Permit")[1], and the Federal

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or

Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or
"CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

WHEREAS, Plaintiff alleges that Defendants' operations at the Facility may
result in discharges of pollutants into waters of the United States and are regulated by
the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

WHEREAS, the General Permit requires all permittees, including Defendants,
to comply with, *inter alia*, the following mandates: (1) develop and implement a
storm water pollution prevention plan and a storm water monitoring implementation
plan; (2) control pollutant discharges using, as applicable, best available technology
economically achievable or best conventional pollutant control technology to prevent
or reduce pollutants through the development and application of Best Management
Practices, which must be detailed in and timely updated in the SWPPP; (3) reduce
and eliminate discharges necessary to comply with any and all applicable Water
Quality Standards; and (4) implement a monitoring and reporting program, including
the MIP, designed to assess compliance with the Permit;

WHEREAS, on May 24, 2024, Plaintiff issued a notice of intent to file suit
("60-Day Notice Letter") to Defendants, their registered agent, the Administrator of
the United States Environmental Protection Agency ("EPA"), the Executive Director
of the State Water Resources Control Board ("State Board"), the Executive Director
of the California Regional Water Quality Control Board, Los Angeles Region,
("Regional Board"), the Regional Administrator of EPA Region IX, and the Attorney
General of the United States Department of Justice, alleging violations of the Clean
Water Act and the General Permit;

WHEREAS, on August 1, 2024, LA Waterkeeper filed a complaint against
Defendants in the Central District of California ("Court"), Civil Case No. 2:24-cv-

---

otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth
herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a
new §XI.B.6.c and §XI.B.6.d.

06500-PA-JC ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendants' discharges of pollutants into storm drains and surface waters, including San Gabriel River Reaches 1 and 2, San Gabriel River Estuary, Alamitos Bay, San Pedro Bay, and the Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, Plaintiff and Defendants (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, Defendants intend to work toward attaining of a No Exposure Certification[2] as defined in the Permit, or, in the alternative, modifying their business operations such that the Facility no longer engages in industrial activity as defined by the Permit, and will therefore no longer be required to enroll under the Permit;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules, and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

---

[2] Permit coverage is "conditionally excluded" for discharges of storm water associated with industrial activities (industrial storm water discharges) if the discharger can certify that industrial activities and materials are not exposed to storm water.

[PROPOSED] CONSENT DECREE

3.     The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.     LA Waterkeeper has standing to bring this action.

5.     The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

I.     **OBJECTIVES**

6.     It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.     In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

II.     **AGENCY REVIEW AND DEFINITIONS**

   A.     **AGENCY REVIEW OF CONSENT DECREE**

8.     <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no

objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.    <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.    <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.    DEFINITIONS**

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree that are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a.    "BAT" means the Best Available Technology Economically Achievable.

b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a

Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.      "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

g.      "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

h.      "Entry Date" means the day this Consent Decree is approved and entered by the Court.

i.      "Forecasted Rain Event" means a forecasted rain event as reported by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "90670, Santa Fe Springs, CA, USA"[3] or as reported to Defendants from their consultant via email updates.

j.      "MIP" means a Monitoring Implementation Plan.

k.      "PPT" means Pollution Prevention Team.

l.      "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

m.      "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

n.      "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

o.      "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

---

[3] Available at https://forecast.weather.gov/MapClick.php?lat=33.9353&lon=-118.0643.

p.      "SWPPP" means a Storm Water Pollution Prevention Plan.

q.      "Term" means the period between the Effective Date and the "Termination Date."

r.      "Termination Date" means the latest of:

   i.      June 30 following two (2) years from the Effective Date;

   ii.     seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to June 30 following two (2) years after the Effective Date; or

   iii.    seven (7) days from Defendants' completion of all payments and other affirmative duties required by this Consent Decree.

s.      "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.     <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.     <u>Current and Additional Best Management Practices.</u> At all times, Defendants shall implement BMPs identified in their SWPPP, and if necessary, shall develop and implement additional BMPs to comply with the General Permit requirement to achieve compliance with BAT/BCT standards, to comply with the applicable water quality standards, and to prevent or reduce contamination in storm water discharges from the Facility in compliance with this Consent Decree.

14.     <u>Rain Gauge/Sensor</u>. Defendants shall install and maintain an electronic rain gauge or sensor at the Facility within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1

inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendants shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

15. <u>Structural and Non-Structural BMPs for the Facility</u>. As soon as possible but no later than forty-five (45) days of the Effective Date, unless otherwise noted, Defendants shall develop and implement the following BMPs at the Facility:

      a.    Patch, pave, or otherwise resurface areas of degraded pavement, concrete, or asphalt throughout the Facility;

      b.    Implement a sweeping program using a push sweeper and/or vacuuming on all paved areas at least once per month outside of the Wet Season, and weekly, or as necessary prior to a Forecasted Rain Event, during the Wet Season;

      c.    Employ and secure wattles/filters/filtration socks (biochar or other equivalent media) as appropriate to remove sediments, metals, and organic materials in storm water discharged from the Facility, and configure such wattles/filters/socks to achieve maximum contact time with storm water prior to discharge. Defendants shall, thereafter, employ and secure new wattles/filters/socks in the same manner annually prior to the start of the Wet Season, no later than September 15th;

      d.    During each Wet Season, as necessary, replace the wattles/filters/socks when degraded or ineffective;

      e.    Institute an equipment and vehicle maintenance program that ensures:

            i.  no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe

9

operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

    ii.  vehicle maintenance activities occur only in designated work areas or beneath covered areas; and

    iii.  when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground; and

    f.    Within seven (7) days of each of the BMPs in Paragraphs 15.a and 15.c above being implemented, Defendants shall confirm to LA Waterkeeper in writing, with representative photographs, that such BMP has been implemented as set forth above.

**B.**    **SAMPLING AT THE FACILITY**

16.    Defendants shall continue to follow the monitoring program that is consistent with the General Permit. Defendant shall continue to use the sampling point at Outfall-01 at the location depicted on the map as its sampling location on the SWPPP uploaded to SMARTS on December 31, 2024.

17.    During the Term, Defendants shall collect samples of storm water discharge from such sampling location from four (4) Qualifying Storm Events in the 2024-2025 Reporting Year, and four (4) Qualifying Storm Events during each subsequent Reporting Year during the Term. Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5. If Defendants would have been required to collect samples during a rain event pursuant to this Consent Decree had such rain event produced a discharge, but Defendants did not collect samples because such rain event did not produce a discharge, then Defendants shall document the inability to sample by taking representative photographs during the rain event of each Discharge Point from which no discharge occurred. Defendants shall submit such representative photographs to LA

Waterkeeper by email, along with rain gauge/sensor data for the date of such rain event, within five (5) days of a written request for such records by LA Waterkeeper.

18.    <u>Sampling Parameters</u>. All samples collected pursuant to this Consent Decree shall be analyzed for the parameters listed in Table 1. Should Defendants intend to conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit for any reason, including without limitation as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendants shall notify LA Waterkeeper if they conduct sampling for any additional parameters within two (2) weeks of such sampling. The NAL for such parameters shall be the applicable Table 1 limit hereunder.

19.    <u>Laboratory and Holding Time</u>. Except for pH samples, Defendants shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

20.    <u>Detection Limit</u>. Defendants shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit.

21.    <u>Reporting</u>. Defendants shall provide complete laboratory results of all samples collected at the Facility to LA Waterkeeper within two (2) weeks of receiving the laboratory report with the results.

**C.    REDUCTION OF POLLUTANTS IN DISCHARGES**

22.    <u>Table 1 Numeric Limits</u>. Defendants shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to levels at or below those in Table 1.

**TABLE 1[4]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| pH | <6 or >9 SU (instantaneous) | NAL |
| Oil & Grease | 15 mg/L (annual); 25 mg/L (instantaneous) | NAL |
| Total Suspended Solids | 100 mg/L (annual); 400 mg/L (instantaneous) | NAL |
| Iron | 1.0 mg/L (annual) | NAL |
| Aluminum | 0.75 mg/L (annual) | NAL |
| Lead | 0.262 mg/L (annual) | NAL |
| Zinc | 0.26 mg/L (annual) | NAL |

23.     Table 1 Exceedances. An "Exceedance" of Table 1 is defined as follows: where the concentration of any pollutant in any two (2) storm water samples from a given Facility within a Reporting Year exceeds the applicable annual value in Table 1;[5] or where the concentration of any pollutant in any one (1) storm water sample from a given Facility exceeds the applicable instantaneous value in Table 1. An Exceedance shall constitute a violation of this Consent Decree.

24.     Action Plan. As of the Effective Date, and for the remainder of the Term, if (a) Defendants have an unauthorized non-storm water discharge in violation of Paragraph 12, or (b) storm water samples demonstrate an Exceedance as defined above, Defendants shall prepare and submit to LA Waterkeeper a plan for reducing

---

[4] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for iron is either increased to 1.1 mg/L or decreased to 0.90 mg/L, such new NAL, and not 1.0 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for iron being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

[5] As examples: (i) samples from both Sample Point 1 and Sample Point 2 exceeding the 100 mg/L standard for TSS on December 28, 2024; (ii) samples from Sample Point 1 exceeding the 100 mg/L standard for TSS on December 28, 2024 and on March 15, 2025; or (iii) a sample from Sample Point 1 exceeding the 100 mg/L standard for TSS on December 28, 2024, and a sample from Sample Point 2 exceeding the 100 mg/L standard for TSS on March 15, 2025.

and/or eliminating the relevant discharge of pollutants for the Facility and/or achieving compliance with the non-storm water discharge prohibition ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of (a) the applicable unauthorized non-storm water discharge or (b) the receipt of the laboratory report demonstrating the Exceedance, as applicable.

a.  Action Plan Requirements. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s) and/or the applicable unauthorized non-storm water discharge; (2) an assessment of the source of each pollutant exceedance and/or applicable unauthorized non-storm water discharge; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s) and/or unauthorized non-storm water discharge prohibition, as well as the design plans of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of each of the BMPs set forth in the Action Plan being implemented, Defendants shall confirm to LA Waterkeeper in writing, with representative photographs, that such BMP has been implemented as set forth in the Action Plan.

b.  Action Plan Proposed BMPs. The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

i.  Hydrologic Controls. Installation of additional berms or

13

equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

ii.    <u>Sweeping</u>. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas and/or implementing a sweeping program using a mechanical ride-on sweeper.

iii.    <u>Downspout Filters</u>. Install downspout filters effective at treating metals on each of the Facility's downspouts.

iv.    <u>Treatment Systems</u>. Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

v.    <u>Evaluation of Existing BMPs</u>.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c.    <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days upon receipt of Defendants' complete Action Plan to provide Defendants with comments. Within thirty (30) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendants shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and

14

implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.  If the Action Plan identifies any changes requiring SWPPP revision, Defendants shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 29.b.i. below.

e.  <u>Action Plan Payments</u>. Defendants shall pay Three Thousand Dollars ($3,000.00) each time an Action Plan is submitted to LA Waterkeeper. Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E. 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

**D.  VISUAL OBSERVATIONS**

25.  <u>Storm Water Discharge Observations</u>. During the Term, trained staff of Defendants shall conduct visual observations which shall comply with all requirements of Section XI.A.2 of the General Permit.

26.  <u>Monthly Visual Observations</u>. During the Term, trained staff of Defendants shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit.

27.    <u>Visual Observations Records</u>. Defendants shall maintain observation records, including representative photographs, to document compliance with the Permit. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, which may include: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; or (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) representative photographs of all the foregoing.  Defendants shall provide LA Waterkeeper with a copy of those records within seven (7) days of receipt of a written request from LA Waterkeeper for those records.

28.    <u>Employee Training Program</u>. Within thirty (30) days of the Effective Date, Defendants shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

       a.    <u>Materials</u>. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendants' personnel to ensure effective implementation of all BMPs at the Facility;

       b.    <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent.;

       c.    <u>Training Frequency</u>. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the

General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d.    Sampling Training. Defendants shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e.    Visual Observation Training. Defendants shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.    Non-Storm Water Discharge Training. Defendants shall train all Designated Employees at the Facility on the General Permit's prohibition of unauthorized non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent unauthorized non-storm water discharges;

g.    Employees. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

h.    Records. Defendants shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

29.    SWPPP Revisions.

a.  <u>Initial SWPPP Revisions</u>. Defendants shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

i.  A revised pollutant source assessment of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii.  A description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by Section X.G of the General Permit;

iii.  Descriptions of all BMPs deemed appropriate for this Site in accordance with Section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

iv.  Describe steps to take prior to a Forecasted Rain Event, including: (1) inspect all wattles/filters/socks deployed at the Facility; (2) remove any exposed waste material; and (3) cover all industrial materials and equipment (including without limitation, dollies and hand trucks), debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered

18

structure adequate to prevent exposure to rainfall; and

    v.    A site map that complies with Section X.E of the General Permit and provisions of this Consent Decree, including accurately depicting the different drainage areas and flows (including flow from the roofs), and the location of the Facility's downspouts.

  b.    <u>Additional SWPPP Revisions</u>.

    i.    Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), if the Action Plan requires revisions to Defendants' SWPPP, Defendants shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment subject to Paragraph 29.c below.

    ii.    Within thirty (30) days after any changes in industrial activities or sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision, Defendants shall revise the then-current SWPPP to reflect such changes and provide to LA Waterkeeper for LA Waterkeeper's review and comment subject to Paragraph 29.c below.

  c.    <u>Review of SWPPP</u>.  For the initial SWPPP update pursuant to Paragraphs 29.a and any substantive[6] SWPPP updates pursuant to

---

[6] If Defendants intend to make what they believe are non-substantive changes to a SWPPP, Defendants shall notify LA Waterkeeper of such changes and LA Waterkeeper may request an opportunity to comment on them pursuant to Paragraph 28.c.

29.b, LA Waterkeeper shall have thirty (30) days upon receipt of Defendants' complete SWPPP to provide Defendants with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendants shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendants shall upload the revised SWPPP to SMARTS.

### E. COMPLIANCE MONITORING AND REPORTING

30. LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendants' compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendants shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendants with at least seventy-two (72) hours' notice prior to a Site Inspection in anticipation of dry weather and at least twenty-four (24) hours' notice prior to a Site Inspection in anticipation of wet weather. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the

purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 57. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

31.    Document Provision. During the Term, Defendants shall notify and submit documents to LA Waterkeeper as follows:

a.    Defendants shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 57, on all of the following when submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality: (1) compliance documents; (2) monitoring and/or sampling data; (3) written communications and/or correspondences related to storm water quality at the Facility (except automated or non-substantive replies and confirmations); and (4) other documents related to storm water quality at the Facility. Within three (3) business days of receipt by Defendants, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 57, any of the following when submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality: (1) compliance documents; (2) monitoring and/or sampling data; (3) written communications and/or correspondences related to storm water quality at the Facility (except automated or non-substantive replies and confirmations); and (4) other documents related to storm water quality at the Facility.

32.    Compliance Monitoring. Defendants shall partially defray costs associated with Plaintiff's monitoring of Defendants' compliance with this Consent Decree during the Term by paying Seven Thousand Five Hundred Dollars ($7,500.00) within thirty (30) days of the Entry Date.  The payment shall be made payable to: Coast Law Group, LLP, Attn: Livia Borak Beaudin, 1140 South Coast

Highway 101, Encinitas CA 92024. In the event that, pursuant to Paragraph 30, there is an additional Site Inspection in a given year to resolve a dispute, Defendants shall reimburse LA Waterkeeper an additional Two Thousand Dollars ($2,000.00) during such year, within thirty (30) days after any additional Site Inspection. Payments for additional Site Inspections to resolve a dispute shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

### F.   ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST

33.   <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the San Gabriel River Watershed, Defendants shall make a payment totaling Twenty-Two Thousand Five Hundred Dollars ($22,500.00) to the Rose Foundation made within thirty (30) days of the Entry Date. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

34.   <u>LA Waterkeeper's Fees and Costs</u>. Defendants shall pay a total of Fifty Thousand Dollars ($50,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to: Coast Law Group, LLP, Attn: Livia Borak Beaudin, 1140 South Coast Highway 101, Encinitas CA 92024. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

35.   <u>Missed Deadlines</u>. In the event that Defendants fail to submit to LA Waterkeeper any payment, document, report, or communication required by this

Consent Decree, Plaintiff shall first provide notice to Defendants. Defendants have seven (7) days to cure, otherwise Defendants shall pay a stipulated payment of Two Hundred Fifty Dollars ($250) per day. Such stipulated payments shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 33. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Defendants agree to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

36.    <u>Interest on Late Payments</u>. Defendants shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. Plaintiff shall first provide notice to Defendants. Defendants have seven (7) days to cure, otherwise the interest shall accrue starting the next business day after this cure period and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendants are current on all payments then due under this Consent Decree and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 33. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607.

## IV.    DISPUTE RESOLUTION

37.    <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically, by

videoconference, or in person) within fourteen (14) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

38. <u>Settlement Conference</u>. If the Parties cannot resolve a dispute as to the terms or requirements within this Consent Decree within thirty (30) days from the date of the meet and confer described in Paragraph 37, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

39. In resolving any dispute arising from enforcing provisions of the Consent Decree, the prevailing Party shall be entitled to seek reasonable fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

40. <u>Plaintiff's Waiver and Release of Defendants</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, releases Defendants, their officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

41. <u>Defendants' Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendants, on their own behalf and on behalf of their officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from, and waives all claims related to, the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

42.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendants' compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.    MISCELLANEOUS PROVISIONS

43.     <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses to any alleged violations that may be raised in the future.

44.     <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

45.     <u>Authority</u>. The undersigned representatives for Plaintiff and Defendants each certify that they are fully authorized by the Party whom they represent to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

46.     <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

47.     <u>Full Settlement</u>. This Consent Decree constitutes a full and final

settlement of this matter.

48.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

49.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

50.    <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

51.    <u>Diligence</u>. Defendants shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

52.    <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does not mean that Defendants are complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

53.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree and agree that it shall not be construed against the Party preparing it but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

54.    <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

55.    <u>Assignment</u>. Subject only to the express restrictions contained in this

Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendants shall notify Plaintiff within ten (10) days of any assignment.

56.    <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

57.    <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| <u>If to Plaintiff</u>: | <u>If to Defendant AireMasters Air Conditioning</u>: |
| --- | --- |
| Los Angeles Waterkeeper | Michael Dean |
| Barak Kamelgard | AireMasters Air Conditioning |
| Benjamin Harris | 12556 McCann Drive |
| Erina Kwon | Santa Fe Springs, CA 90670 |
| Madeleine Siegel | |

| | |
|---|---|
| 360 E 2nd St., Suite 250<br>Los Angeles, CA 90012<br>Email: barak@lawaterkeeper.org<br>Email: ben@lawaterkeeper.org<br>Email: erina@lawaterkeeper.org<br>Email: madeleine@lawaterkeeper.org<br>Phone: (310) 394-6162 | Mdean@airemasters-ac.com<br>If to Defendant Scorpio Enterprises:<br><br>Charles Thompson<br>Scorpio Enterprises<br>12556 McCann Drive<br>Santa Fe Springs, CA 90670<br>Cthompson@airemasters-ac.com |
| With copies to:<br>Livia Borak Beaudin<br>Coast Law Group LLP<br>1140 South Coast Highway 101<br>Encinitas, CA 92024<br>Email: livia@coastlaw.com<br>Email: natalie@coastlaw.com<br>Phone: 760-942-8505 | With copies to:<br>Megan S. Meadows<br>Law Office of Jennifer F. Novak<br>500 Silver Spur Road, Suite 206<br>Rancho Palos Verdes, CA 90275<br>Email: megan@jfnovaklaw.com<br>Phone: 310-693-0775 |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

58.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

[PROPOSED] CONSENT DECREE

1        IN WITNESS WHEREOF, the undersigned have executed this Consent Decree

2   as of the date first set forth below.

3   APPROVED AS TO CONTENT

4

5

6   Dated: _____January 16_____, 2025        By: _____
                                                       Bruce Reznik
7                                                      Executive Director
                                                       Los Angeles Waterkeeper
8

9

10  Dated: _____, 2025                 By: _____
                                                       Michael Dean
11                                                     President
                                                       AireMasters Air Conditioning, Inc.
12

13

14  Dated: _____, 2025                 By: _____
                                                       Charles Thompson
15                                                     President/CEO
                                                       Scorpio Enterprises, Inc.
16

17

18  APPROVED AS TO FORM

                                                 COAST LAW GROUP, LLP
19

20

21  Dated: _____January 16_____, 2025        By: _____
                                                       Livia Borak Beaudin
22                                                     Attorney for Plaintiff
                                                       Los Angeles Waterkeeper
23

24

25

26

27

28

[PROPOSED] CONSENT DECREE

its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT


Dated: _____, 2025          By: _____
                                          Bruce Reznik
                                          Executive Director
                                          Los Angeles Waterkeeper


Dated: 1/14_____, 2025          By: _____
                                          Michael Dean
                                          President
                                          AireMasters Air Conditioning, Inc.


Dated: January 14, 2025          By: _____
                                          Charles Thompson
                                          President/CEO
                                          Scorpio Enterprises, Inc.


APPROVED AS TO FORM

                                     COAST LAW GROUP, LLP


Dated: _____, 2025          By: _____
                                          Livia Borak Beaudin
                                          Attorney for Plaintiff
                                          Los Angeles Waterkeeper

[PROPOSED] CONSENT DECREE

Law Office of Jennifer F. Novak

Dated: January 17, 2025

By: _____
Megan S. Meadows
Attorney for Defendants
AireMasters Air Conditioning, Inc.
and Scorpio Enterprises, Inc.

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendants.

Dated: May 06, 2025

CENTRAL DISTRICT OF CALIFORNIA

_____
The Honorable Percy Anderson
United States District Court Judge

[PROPOSED] CONSENT DECREE

Law Office of Jennifer F. Novak

Dated: _____, 2025          By: _____
                                              Megan S. Meadows
                                              Attorney for Defendants
                                              AireMasters Air Conditioning, Inc.
                                              and Scorpio Enterprises, Inc.

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendants.

Dated: _____          CENTRAL DISTRICT OF CALIFORNIA


                                     _____
                                     The Honorable Percy Anderson
                                     United States District Court Judge

[PROPOSED] CONSENT DECREE